IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**KEYARA FLEECE,** *on behalf of herself and*
*all others similarly situated*,

       Plaintiffs,

v.                                                                                          Civil Action No. 3:19-cv-00396-REP

**HCA HEALTH SERVICES OF VIRGINIA,
INC.**

**and**

**HCA HEALTH SERVICES OF VIRGINIA,
INC. d/b/a HENRICO DOCTORS'
HOSPITAL**

       Defendants.

**AMENDED CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

      COMES NOW, Plaintiff Keyara Fleece, on behalf of herself and all others similarly situated, and alleges the following:

**INTRODUCTION**

    1.    Plaintiff Keyara Fleece (Plaintiff) brings this Amended Complaint against HCA Health Services of Virginia, Inc., a Virginia Corporation, and HCA Health Services of Virginia, Inc., a Virginia corporation, doing business as Henrico Doctors' Hospital[1] ("Henrico Doctors'

---

[1] Plaintiff originally named Capital Division, Inc., doing business as HCA Virginia Health System ("Capital Division") and HCA Health Services of Virginia, Inc. d/b/a Henrico Doctors' Hospital as Defendants in her Complaint (the "Initial Defendants"). On September 24, 2019, Plaintiff and the Initial Defendants stipulated to the dismissal of Capital Division, with prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). Prior to September 24, 2019, the Initial Defendants took the position that HCA Health Services of Virginia, Inc. d/b/a Henrico Doctors' Hospital was a separate and distinct legal entity from HCA Health Services of Virginia, Inc. It is undersigned counsel's understanding that the remaining Defendant in this case takes the position that it is a separate and distinct legal entity from HCA Health Services of Virginia, Inc. Accordingly, Plaintiff is now naming HCA Health Services of Virginia, Inc., a Virginia Corporation, and HCA Health Services

Hospital") (collectively "Defendants"). Defendants provided emergency care to Plaintiff and other similarly situated emergency care patients.

2. In this action, Plaintiff challenges Defendants' unfair, deceptive, and unlawful practice of charging its emergency care patients a substantial undisclosed and effectively concealed facility fee for visiting one of Defendants' emergency rooms (hereinafter "Surcharge").

3. Defendants' Surcharges are billed on top of the charges for the individual items of treatment and services provided, but they are not disclosed and are effectively concealed in advance of providing treatment/services to emergency care patients presenting at one of Defendants' emergency room facilities.

4. Knowledge of these substantial yet undisclosed Surcharges, which are essentially a "cover charge" or "surcharge" billed to a patient simply for being seen in one of Defendants' emergency facilities, if disclosed in advance of such charges being triggered, would be a substantial factor in an emergency care patient's decision to remain at the hospital or seek less costly treatment/services elsewhere.

5. This action is limited to individuals who were provided emergency care (or who are financially responsible for the care of another) after presenting at an emergency room facility controlled and/or operated by Defendants during the last four years.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Defendants.

---

of Virginia, Inc. doing business as Henrico Doctors' Hospital as Defendants in this Amended Complaint.

7.    Federal jurisdiction is proper here under CAFA since the matter in controversy exceeds the sum or value of $5,000,000[2] (exclusive of interest and costs) in the aggregate, at least one of the hundreds of thousands of class members seen in an HCA Virginia Health System hospital was a citizen of another state at the time of their emergency room visit,[3] and the number of class members clearly exceeds 100.

8.    Venue is proper here because Defendants are located and do business in Henrico County, Virginia, and because a portion of the acts and transactions giving rise to this Complaint took place in Henrico County, Virginia.

**PARTIES**

9.    Defendants own and operate Henrico Doctors' Hospital, which maintains two standalone campuses in Henrico County, Virginia and own one-hundred percent (100%) of the common stock or membership interest of Spotsylvania Medical Center, Inc. (operating as Spotsylvania Regional Medical Center); Reston Hospital Center LLC (operating as Reston Hospital Center); and Columbia/HCA John Randolph, Inc. (operating as John Randolph Medical Center).

10.   Defendants conduct business within the Commonwealth of Virginia, and have purposely availed themselves of the benefits and protections of this Commonwealth, and/or have sufficient contact with this Commonwealth such that maintenance of this action in this locale would be consistent with traditional notions of fair play and substantial justice.

---

[2] The current Surcharge levels in dispute vary from $578 for Level 1 to $2,879 for Level 5. With over 60,000 reported emergency room visits annually at the Henrico Doctors' Hospital, there would be more than $30 million in Surcharges in controversy, even if all Surcharges were at the lowest level, for only a single hospital, and just for a single year. Thus, the $5,000,000 minimum for the matter in controversy is readily exceeded.

[3] Henrico Doctors' Hospital has agreed to furnish sufficient information in discovery to conclusively confirm minimal diversity.

11. Plaintiff Keyara Fleece is a resident of Henrico County, Virginia, over the age of eighteen years, who treated at Henrico Doctors' Hospital's emergency room in Henrico County, Virginia.

## GENERAL ALLEGATIONS

12. At all relevant times, Defendants' hospitals used an emergency room admissions agreement (hereinafter "Contract"), drafted by Defendants, whose terms were not dictated by statute or otherwise, and which all emergency care patients (or their agents) presenting at Defendants' hospitals were requested to sign. The Contract failed to disclose, or even mention, the substantial Surcharge that Defendants intended to charge each emergency room patient on top of the individual charges for specific items of treatment/services. Further, Defendants' Surcharge was not disclosed on signage posted in or around Defendants' emergency rooms, or disclosed to patients verbally during the patient registration process.

13. At all relevant times, and despite Defendants' failure to disclose or inform patients they would be charged a substantial Surcharge for being seen in one of Defendants' emergency room facilities, Defendants billed emergency room patients with a substantial, yet totally undisclosed and effectively concealed Surcharge at each of their Virginia Emergency Room Facilities. Defendants set the Surcharges at one of five fixed levels, with the level being determined after the patient's discharge based on an internally developed formula known exclusively to Defendants. Henrico Doctors' Hospital's recent Surcharge amounts for each of the five levels are as follows: Level 1: $578.00; Level 2: $917.00; Level 3: $1664.00 (billed to Plaintiff); Level 4: $2,486.00; and Level 5: $2,879.00.

14. Defendants' undisclosed Surcharges, unlike the charges for specific items of treatment/services ordered for the patient such as X-rays, laboratory services, sterile supplies, or

drugs, are essentially an undisclosed cover charge added to a patient's bill simply for being seen at one of Defendants' emergency rooms. Defendants' intention to add a Surcharge to a patient's bill is not disclosed in Defendants' Contract, is not disclosed on signage placed in or around Defendants' emergency rooms (where a patient would at least have the opportunity of knowing of the Surcharge), and is not disclosed verbally during the patient's registration process.  Further, the formula or algorithm used by Defendants to determine the level of the Surcharge (1, 2, 3, 4 or 5) is also not disclosed to patients, thus making it impossible for patient, even if aware of the Surcharge, to attempt to limit the level or amount of the Surcharge.

15. A patient's knowledge of a substantial Surcharge, if disclosed prior to treatment, would be a substantial factor in an emergency room patient's decision to remain at the Hospital or seek less costly treatment/services elsewhere. The high cost of medical services is currently a matter of great public concern, and emergency care patients have a right to be informed of a Surcharge before it is triggered. Defendants' failure to disclose and intentional concealment of their Surcharges results in a lack of pricing transparency and a lack of informed consent by the vast majority of emergency care patients who are totally unaware of such Surcharges. Further, Plaintiff is informed and believes and thereon alleges that many emergency care patients, if made aware of Defendants' Surcharges prior to receiving treatment, would choose to seek less costly treatment elsewhere.

16. Defendants bill their Surcharge to emergency care patients in addition to their charges for the specific services and treatment rendered, even though: (a) Defendants intention to bill a substantial Surcharge is not disclosed to patients in Defendants' Contract, or in signage posted in or around its emergency rooms, or verbally during the patient registration process; (b) emergency care patients cannot reasonably be expected to be aware of this Surcharge; (c)

Defendants are well aware that most emergency room patients are completely unaware of Defendants' intention to add a Surcharge to their bill; and (d) knowledge of the existence and amounts of this Surcharge, if provided prior to emergency room treatment/services, would be a substantial factor in influencing a reasonable patient's decision as to whether to remain for treatment at Defendants' emergency room facilities or seek less costly treatment elsewhere.

17. The failure of Defendants to disclose their Surcharges is particularly egregious in light of the fact that Defendants represent themselves as providing care and help to patients in the community. Unlike a normal arms-length transaction between a buyer and seller, a patient seeking medical services at one of Defendants' emergency rooms places a great degree of trust and confidence on the good intentions of the hospital to treat him or her fairly and with compassion.

18. This trust and reliance is heightened by Defendants' Mission and Values Statement, as it appears on a website touting Defendants' hospitals:

> Above all else, we are committed to the care and improvement of human life. In pursuit of our mission, we believe the following value statements are essential and timeless: We recognize and affirm the unique and intrinsic worth of each individual. We treat all those we serve with compassion and kindness. We trust our colleagues as valuable members of our healthcare team and pledge to treat one another with loyalty, respect, and dignity. We act with absolute honesty, integrity, and fairness in the way we conduct our business and the way we live our lives.

HCA Mission and Values, available at https://hcavirginia.com/about/mission-and-values.dot (last accessed on November 7, 2019).

19. Through these statements and other representations to the public, Defendants represent to potential patients that they will put the patient's needs first, and thereby certainly create a heightened duty to disclose issues important to patients, including their hidden surcharges, which are adverse to the patient's interest.

## ALLEGATIONS AS TO REPRESENTATIVE FLEECE

20. On November 24, 2018, Plaintiff received emergency treatment/services at Henrico Doctors' Hospital's emergency facility, where she was provided with and signed Defendants' standard form Contract.

21. Plaintiff was not furnished a copy of the Contract at the time of signing or upon discharge, and, on information and belief, alleges that the standard practice of Defendants is to have emergency care patients (or their legal guardians) sign the Contract, but not provide a copy of the signed Contract to the patient at the time of signing or upon discharge.

22. While at Henrico Doctors' Hospital, Plaintiff received no notice or warning in the Contract, in posted signage in the emergency room, or verbally at the time of registration, as to Defendants' intention to add a substantial Surcharge to her bill on top of the individual charges for the individual item of treatment/services provided.

23. On November 24, 2018, Plaintiff was informed by an employee of Defendants that she was required to make a "good faith payment" for her treatment because of her lack of insurance. This employee told Plaintiff that Defendants needed a "good faith payment" of $100.00, but Plaintiff said she had very limited funds, and Defendants' employee agreed to take a "good faith payment" of $50.00, which Plaintiff paid with a debit card.

24. The gross amount subsequently billed for the treatment/services provided to Plaintiff was $2,286.00, which Plaintiff discovered on or about November 28, 2018 included an undisclosed Surcharge of $1,664.00 for merely being seen in HCA Henrico Doctors' emergency room.

25. Plaintiff was surprised, dismayed and aggrieved when she discovered that she had been billed an undisclosed and intentionally concealed Surcharge in the amount of $1,664.00, in addition to the charges for the individual items of treatment/services provided.

26. On or about January 7, 2019, Henrico Doctors' Hospital generated correspondence to Plaintiff stating that her "account balance" totaled $2,236.00.

27. On or about February 4, 2019, Henrico Doctors' Hospital generated correspondence to Plaintiff stating that her "account balance" totaled $2,236.00 and "[n]o payment is due at this time. You will soon be receiving a billing statement for the amount you owe."

28. On or about February 5, 2019, through application an uninsured discount, Defendants reduced Plaintiff's account balance by eighty-nine percent (89%). Defendants applied that uninsured discount to the entirety of Plaintiff's account balance. This process for applying Defendant's uninsured discount is uniform for all emergency room patient accounts which Defendants categorized as eligible for an uninsured discount.

29. On or about February 10, 2019, Defendants generated a statement for Plaintiff which stated that she owed an outstanding balance of $201.46.

30. On or about March 5, 2019, NPAS, Inc., a subsidiary of HCA Healthcare, Inc., generated correspondence to Plaintiff stating that she owed an outstanding balance of $201.46 for her emergency room visit.

31. Thereafter, Defendants referred Plaintiff's account to MediCredit, Inc. ("MediCredit"), a debt collector specializing in the collection of medical debt. On or about May 14, 2019, MediCredit generated a dunning letter directed to Plaintiff, which stated, in part: "[t]he account(s) listed below have been placed with this agency with the full intention of collecting on this account(s)."

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action on behalf of herself and a class of all other persons similarly situated, defined as follows:

> *Each individual who, within the last four years, received treatment at any of Defendants' emergency room facilities located in the Commonwealth of Virginia, and who was charged an emergency room facility fee which was billed in addition to the charges for the individual items of treatment and services provided (the "Class").*
>
> *Excluded from the Class are any officers or directors of Defendants, together with the legal representatives, heirs, successors, or assigns of Defendants, and any judicial officer assigned to this matter and his or her immediate family.*

33. Defendants have collectively and individually acted or refused to act on grounds generally applicable to Class members, and have engaged in a systemwide policy of billing emergency care patients a substantial undisclosed and effectively concealed Surcharge, thereby making final declaratory and injunctive relief concerning the Class as a whole appropriate.

34. This action has been brought and may properly be maintained as a class action, satisfying the numerosity, commonality, predominance, typicality, adequacy of representation, and superiority requirements.

35. Plaintiff seeks to represent an ascertainable Class with a well-defined community of interest in the questions of law and fact involved in this matter.

36. The members of the Class are so numerous that joinder of all members of the Class is impractical. Plaintiff is informed and believes and thereon alleges that the Class consists of at least tens of thousands of persons.

37. This action involves the question as to whether Defendants' uniform practice of billing emergency care patients a substantial, totally undisclosed and hidden Surcharge is unfair, deceptive, and/or unlawful. This question dominates over any individual issues that might exist.

38. The claims of Plaintiff are typical of the claims of the Class, and Plaintiff is a member of the Class as defined.

39. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff shares the same interests as all Class members because Plaintiff's claims are typical of those of other Class members.

40. Plaintiff has retained competent class counsel who possess experience in class action and complex litigation and who will fairly and adequately protect the interests of the Class members.

41. A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since joinder of all Class members is impracticable, and it would be virtually impossible for the Class members to efficiently redress their wrongs individually. Even if all Class members could afford such individual litigation themselves, the court system would benefit from a class action.

42. Individualized litigation would present the potential for inconsistent or contradictory judgments, and magnify the delay and expense to all parties and the court system.

43. By contrast, the class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court, as well as an economy of scale and expense.

FIRST CAUSE OF ACTION

<b>Declaratory Judgment</b>

44. Plaintiff herein repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs, with the same force and effect as though the same were set forth at length herein.

45. The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), states as follows:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

*Id.*

46. The Federal Declaratory Judgment Act, 28 U.S.C. § 2202, further provides as follows: "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." *Id.*

47. Plaintiff and members of the Class are entitled to a declaration, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), that Defendants' Contract does not authorize the billing of a Surcharge to emergency care patients; that Defendants' Contract does not contain a promise by emergency care patients to pay the Surcharge described herein; that Defendants' practice of billing emergency care patients an undisclosed and effectively concealed Emergency Department facility fee, in addition to the charges for the specific services and treatments provided, is an unconscionable billing practice; and that the Contract provision which Defendants contend authorizes such fee does not, in fact, authorize such fee and/or is unenforceable.

48. Plaintiff and members of the Class are entitled to a further declaration that Defendants have a "duty to disclose" to emergency room patients their intention to charge them a Surcharge prior to providing treatment triggering the Surcharge, because of (1) the substantial nature of the Surcharge, (2) the relationship between Defendants and their emergency room

patients, (3) the hidden nature of Defendants' Surcharges, (4) the general lack of knowledge of emergency room patients as to Defendants intention to bill them a Surcharge, (5) the lack of reasonable opportunity for an emergency room patient to find out about Defendants' Surcharge, (6) Defendants knowledge that most emergency care patients are completely unaware of Defendants intention to add a substantial Surcharge to their bill, and (7) the fact that knowledge of Defendants' Surcharge, in advance of treatment/services being rendered, would be a material factor in a reasonable patient's decision to remain at Defendants' emergency room facility or seek less costly treatment/services elsewhere.

49. The declarations sought above are necessary and appropriate since Plaintiff and the Class have been, and continue to be, impacted by Defendants' substantial, undisclosed, and intentionally concealed Surcharges. Even for those patients whose Surcharge has not yet been paid, they should not have to wait until collection efforts are underway, or their credit is ruined or lawsuits are instituted by Defendants, before obtaining a legal determination of their rights and obligations with respect to Defendants' Surcharges.

50. Plaintiff is also entitled to declaratory and injunctive relief to prohibit Defendants from continuing to bill Surcharges without full and proper disclosure to emergency room patients in advance of such Surcharges being triggered, and from pursuing existing collection activity for such Surcharges billed previously. The Federal Declaratory Judgment Act is remedial in nature and should be broadly construed.

51. No monetary damages or restitution are sought within this complaint, and no "reasonable value" determinations as to any of the services provided to Plaintiff or any other patient are sought within this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, pray for the following relief against Defendants, and each of them, as follows:

1. For an order certifying that this action may be maintained as a class action against Defendants and appointing Plaintiff and her counsel to represent the Class;

2. For a declaration or declarations as prayed herein;

3. For injunctive relief to enforce the relief prayed for herein;

4. For an order awarding Plaintiff and members of the Class the costs of their suit, including, but not limited to, reasonable attorneys' fees and expert fees; and

5. For such other and further relief as may be just and proper.

Plaintiff, on behalf of herself and the Class, respectfully request trial by jury on all claims so triable.

Respectfully submitted,

**KEYARA FLEECE**

By  /s/ Drew D. Sarrett
         Counsel

Barry L. Kramer (California State Bar. No. 61772)
(admitted *pro hac vice*)
Law Office of Barry Kramer, LLC
9550 S. Eastern Ave., Suite 253
Las Vegas, Nevada 89123
Phone: (702) 778-6090
E-mail: kramerlaw@aol.com

Drew D. Sarrett (Virginia State Bar No. 81658)
The Sarrett Law Firm, PLLC
8100 Three Chopt Road, Suite 203
Richmond, Virginia 23229
Phone: (804) 303-1951
Fax: (804) 250-6005
E-mail: drew@sarrettlawfirm.com
*Counsel for Plaintiff(s)*

## CERTIFICATE OF SERVICE

I, Drew D. Sarrett, counsel for Keyara Fleece, certify that on December 3, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing (NEF) to all counsel of record.

                                                        /s/ Drew D. Sarrett
                                                        Drew D. Sarrett